**Opinion filed July 19, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00028-CV

_____

## IN THE INTEREST OF J.A.A., JR., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8399-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, based upon the jury's verdict, terminated the parental rights of the mother and the father of J.A.A., Jr. The mother appeals. She presents two issues on appeal. We affirm.

### *Termination Findings*

In both issues, Appellant challenges the sufficiency of the evidence to support the trial court's findings in support of termination. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine on appeal if the evidence is legally

sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

After being instructed in accordance with Section 161.001(b), the jury answered the questions posed in the trial court's charge to the jury and determined that Appellant's parental rights should be terminated. The trial court subsequently entered an order of termination and found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

Appellant challenges only two of the trial court's findings. Appellant does not present any issue or argument challenging the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E). "Only one predicate finding" under Section 161.001(b)(1) is necessary. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Accordingly, either of the unchallenged findings under Section 161.001(b)(1) is sufficient to support the termination of Appellant's parental rights as long as termination was shown to be in the child's best interest. *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied). Therefore, we do not address the merits of Appellant's second issue, in which Appellant challenges the finding under subsection (O); we need only address Appellant's challenge to the sufficiency of the evidence with respect to the trial court's best interest finding, which Appellant presents in her first issue. *See* TEX. R. APP. P. 47.1.

*Analysis as to Best Interest*

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination

may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record reflects that the child involved in this case was medically fragile and suffered from a variety of ailments, including a severe swallowing dysfunction that had necessitated a "G-button" feeding tube. The Department became involved with the child in this case in April 2016 based upon an allegation of medical neglect. One month later, the Department received another intake when the child was admitted to the hospital based upon the child's failure to thrive. Appellant refused to feed the child during the night as required for him to receive the amount of calories needed, and she instructed the nurses at the hospital not to come into their room every three hours to feed the child. When a nurse explained that the child needed to be fed every three hours, Appellant commented, "How are we supposed to get any sleep if we have to do these feedings every three hours throughout the night?" The Department instigated an emergency removal after the parents, in an attempt to leave the hospital before the child was discharged, cut the child's hospital band, which set off a hospital alarm and caused a lockdown. After being removed from the parents' care, the child gained weight in dramatic fashion. At the time of removal, the child was nineteen months old and was well under the third percentile in weight when compared to children his age, but by the time he was thirty-six months old, he was above the fiftieth percentile. The child's failure to thrive was due to the parents' failure to feed him enough.

In addition to being "moderately malnourished" while in the care of his parents, the child had missed twenty-two appointments with specialists at Cook Children's Medical Center. The parents did not have a good explanation for missing those visits.

4

Drug screens that were conducted after removal reflected that the mother tested positive for methamphetamine and that the father tested positive for morphine, hydrocodone, oxycodone, amphetamine, and a high level of methamphetamine. The child also tested positive for methamphetamine.

While this case was pending, Appellant worked to complete her family service plan, but the father refused to do so. Appellant continued her relationship with the father and lied to the Department about that relationship.

Shortly after removal, the child was placed with relatives. When those relatives informed the Department that they were unable to continue in that role, the Department placed the child with a home health nurse who had been taking care of the child at the relatives' house. At the time of trial, the child still lived with that nurse and her husband. The child had developed a very strong bond with the couple and referred to the couple as "Mom" and "Dad." The couple would like to adopt the child. The conservatorship caseworker testified that the Department's goal for the child is termination of the parents' rights because "it is not safe for the child . . . to go home to them." A CASA volunteer testified that she believed that termination of Appellant's parental rights would be in the child's best interest. Additionally, the child's attorney ad litem believed that the child's best interest would be served if the child were to remain with the placement couple.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in the child's best interest for his mother's parental rights to be terminated. The evidence at trial showed that Appellant was not capable of meeting the child's needs, that the child's failure to thrive was due to Appellant's neglect, and that the child was exposed to

5

methamphetamine while in Appellant's care. The child is in a safe, appropriate placement with a couple who wants to adopt him. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

JUSTICE


July 19, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.